**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MICHAEL MARTIN,              :
                                                         Civil Action No. 07-5399 (SDW)
        Petitioner,  :

        v.           :  **OPINION**

KAREN BALICKI, et al.,       :

        Respondents. :

**APPEARANCES:**

Petitioner pro se
Michael Martin
South Woods State Prison
215 Burlington Road South
Bridgeton, NJ 08302

**WIGENTON**, District Judge

    Petitioner Michael Martin, a prisoner currently confined at South Woods State Prison in Bridgeton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondents are Administrator Karen Balicki and the Attorney General of New Jersey.

    Notice has been given pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000). Because it appears from a review of the Petition that Petitioner is not entitled to issuance of the writ, the Court will dismiss the Petition. See 28 U.S.C. § 2243.

I.  BACKGROUND

Petitioner was convicted in 2002, in the Superior Court of New Jersey, Trial Division, Passaic County, pursuant to a guilty plea, of aggravated manslaughter,[1] resulting in a sentence of 25-years imprisonment with an 85-percent parole disqualifier. Plaintiff's sentence was based upon the sentencing judge's findings regarding three aggravating factors: the nature and circumstances of the offense (which the trial court found particularly heinous), the risk that Petitioner might commit another offense (based upon his criminal record and the fact that the crime was committed in violation of an existing restraining order), and the need to deter Petitioner and others from violating the law.[2]

On March 11, 2003, the Superior Court of New Jersey, Appellate Division, affirmed the sentence.  Petitioner did not seek certification from the Supreme Court of New Jersey.

On March 5, 2004, Petitioner filed a petition for post-conviction relief ("PCR").  On August 16, 2005, the PCR court

---

[1] The state amended the indictment to change the charge of murder to a charge of aggravated manslaughter, and the state dismissed related charges of felony murder, burglary, possession of a weapon for an unlawful purpose, and contempt of court (arising out of violation of a restraining order).

[2] Petitioner has attached to the Petition a memorandum of law and the relevant state court record, including the transcripts of the plea hearing, the sentencing hearing, and the post-conviction relief hearing, as well as the record of his post-conviction relief appellate proceedings.

2

held a hearing. At the conclusion of the hearing, the PCR court denied the petition. On February 22, 2007, the Appellate Division affirmed the denial of relief. On June 1, 2007, the Supreme Court of New Jersey denied certification. This Petition followed.

Here, Petitioner asserts that his sentence was illegal: "The Trial Court Violated Defendant's Federal and State Constitutional Rights to Due Process And To A Jury Trial When It Imposed Sentence Greater Than The Presumptive Term, Based Upon Facts Neither Admitted By Defendant Nor Found By The Jury."[3] (Petition, ¶ 12.) Petitioner contends that the sentence imposed violated the rule announced by the Supreme Court in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), limiting the use in sentencing of certain facts not found by a jury pursuant to the "beyond a reasonable doubt" standard.[4] Petitioner also contends that his

---

[3] A violation of state law is not grounds for federal habeas relief. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a). Accordingly, Petitioner is not entitled to relief on the ground that the sentence violated his rights under state law.

[4] In <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 471, 490 (2000), pursuant to the Sixth Amendment right to trial by jury, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), the Supreme Court overturned a sentence imposed under Washington state's sentencing system, explaining that "the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional
3

trial and appellate counsel failed to provide effective assistance because they failed to raise the <u>Apprendi</u> issue.

## II. <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

United States Code Title 28, Section 2243 provides in relevant part as follows:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399 U.S. 912 (1970). Nevertheless, a federal district court can dismiss a habeas corpus petition if it appears from the face of the petition that the petitioner is not entitled to relief. See <u>Lonchar v. Thomas</u>, 517 U.S. 314, 320 (1996); <u>Siers v. Ryan</u>, 773

---

findings." 542 U.S. at 302 (internal quotations omitted). Most recently, in <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Supreme Court applied the rule of <u>Apprendi</u> to the United States Sentencing Guidelines, finding the Guidelines unconstitutional, and rendering them merely advisory, rather than mandatory.

4

F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989). See also 28 U.S.C. §§ 2243, 2254, 2255.

Here, because it is apparent from the Petition and attachments that Petitioner is not entitled to relief, this Court will not require Respondents to file an answer. See Rules Governing Section 2254 Cases in the United States District Courts, Rule 4 ("If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition").

### III.   28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas

6

court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment. See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000). See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

## IV.   ANALYSIS

Petitioner asserts that his sentence violates the constitution because it exceeds the presumptive sentence and was imposed based upon judicial fact-finding of aggravating factors

that should have been found by a jury. In addition, although not stated as a separate ground for relief in the Petition, Petitioner argues in his brief that he should not be precluded from bringing this claim for relief in a collateral proceeding because his trial and appellate counsel failed to provide effective assistance of counsel by failing to raise this issue.

This is the same claim raised by Petitioner, and rejected by the trial court, in his state PCR petition.

> On March 25th of 2002, following the rather extensive discussions between the parties, the defendant agreed to accept a plea offer from the State, whereby Count 1, murder, was amended to aggravated manslaughter. And he entered a plea of guilty with a recommendation from the State that he be sentenced to 25 years in New Jersey State prison with 85 percent before parole, namely the No Early Release Act to apply in this case.
>
> In th 25-page transcript, this Court voir dired the defendant at length. The defendant agreed that he knew exactly the sentence he was facing. It should be noted for the record that the defendant was facing a murder charge. Had that case gone to trial and the defendant had been found guilty, which was a very strong possibility in light of the testimony of the victim's mother who witnessed the killing, this defendant could have been found guilty by the jury of murder. In which case his sentence could have been or would have been life with 30 years before parole, or the Court could have imposed a longer period of parole ineligibility. The minimum the Court could have imposed was 30 years before parole.
>
> The defendant, after consultation with his attorney, decided to accept the State's plea offer for the amended charge of aggravated manslaughter. He gave the Court a factual basis which was accepted. He was interviewed in preparation of a presentence report, and he reaffirmed his plea of guilty.

> On the date he was sentenced, June 28th of 2002, he once again confirmed his plea of guilty, and the Court then proceeded to sentence him in accordance with the plea agreement. The defendant was fully aware of the sentence he was facing. I, as the sentencing judge and the judge that took the plea, questioned him extensively on the record as to what he was facing. He knew that he was facing the 25 years, 85 percent before parole.
>
> ...
>
> Our Appellate Division, in State versus Natale, which was decided after Blakely, followed the ruling in Blakely and in effect says that it's illegal to sentence a defendant above the presumptive sentence in the absence of jury findings of certain aggravating factors. The only one the Court could use without a jury finding is a prior record.
>
> Natale was taken up on appeal. Our supreme Court issued their decision in Natale, and that was issued on August 7th -- August 2nd, rather, 2005. In a very and rather extensive opinion, Justice Albin, writing for a unanimous court, in fact, established a new rule of law in the State of New Jersey abolishing presumptive sentences. The Court went on to add that a judge now can sentence a defendant up to the maximum amount of years called for in the sentencing recommendations. For first degree, for example, 10 to 20.
>
> The Court, in their opinion, also addressed cases like those of this defendant. ...
>
> ["]Full retroactiveity would overwhelm our courts with resentencing and impose a devastating burden on the judiciary and is not warranted under the circumstances." ... "Pipeline retroactivity, ... applying our holding to defendants with cases on direct appeal as of the date of this decision and to those defendants who raised Blakely claims at trial or on direct appeal best balances principles of fairness and repose." ...
>
> In this case it is clear, from my point of view from reading this decision of our Supreme Court that this defendant does not fall within the pipeline retroactivity as enunciated in Natale. Counsel for the

9

defendant argues that it should be an exception based on the Apprendi ruling, which was announced ... before Mr. Martin pled guilty. But our Supreme Court in Natale addressed Apprendi, as well. And at no time at all in this 45, 46-page decision have I come across any reference to exceptions being carved for Apprendi.

    This Court finds, based on a review of the law, that, in fact, the defendant does not fall within the pipeline retroactivity as being claimed by the defense. However, assuming arguendo that he does, this Court then has to address the issue as to whether he implicitly consented to judicial fact finding.

    The transcript is replete with references of questions by this Court to the defendant. The defendant was fully aware that the State was giving up the right to proceed against him on a charge of murder, which could have resulted in him spending the rest of his natural life in prison. In fact, he accepted a plea agreement from the State in which he agreed to a sentence of 25 years with 85 percent before parole. It is not that this Court gave him more than he plea bargained for. I gave him exactly what the plea called for.

    ...

    ... Mr. Martin was questioned at length as to what the sentence was going to be. He gave facts to this Court that, quite frankly, this Court accepted, in -- in spite of the brutality of this murder on the victim.

    Counsel argues here today that Mr. Rosenblum was ineffective in not pursuing the issue under Apprendi. The test for determining whether a defendant has, in fact, received effective assistance of counsel was first announced in Strickland versus Washington, 466 U.S. 668, 1984. First it must be shown that counsel's performance fell below, quote, "an objective standard of reasonableness," closed quote. State versus DiFrisco, 174 New Jersey 195, 219, 2002 citing Strickland, Supra.

    This first prong of the test can be satisfied by demonstrating that counsel's acts or opinions fell, quote, "outside the wide range of professional,

>competent assistance considered in light of all the circumstances of the case," closed quote. Id. citing Strickland, Supra., at 690. The second prong of that test requires a, quote, "reasonable probability that but for counsel's unprofessional errors, the rsult of the proceeding would have been different," closed quote. Id. citing Strickland, Supra., at 694.
>
>. . .
>
>In this case, Mr. Rosenblum performed a very commendable service for this defendant. This Court, as I said, presided over ten status conferences in which the defendant appeared with Mr. Rosenblum as his counsel. Mr. Rosenblum did a remarkably good job for this defendant in getting the plea that he eventually entered in March of 2002. This Court does not find one iota of evidence to indicate that Mr. Rosenblum was ineffective in any way. This Court sees absolutely no legal basis for granting an evidentiary hearing on this issue.
>
>So on the issue, first of all, this Court finds that there was no -- this case is not one that falls within the pipeline retroactivity, as announced in Natale. But even if it died, this defendant implicitly consented to judicial fact finding in according to the ruling in State versus Anderson. The motion for post conviction relief is denied.

(Tr. of Motion, August 16, 2005, at 33-42.)

The Appellate Division affirmed for the reasons stated in the trial court's opinion.

A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." See Grecco v. O'Lone, 661, F.Supp. 408, 415 (D.N.J. 1987) (citation omitted). Thus, a challenge to a state court's discretion at sentencing is not reviewable in a

11

federal habeas proceeding unless it violates a separate federal constitutional limitation.  See Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984).  See also 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990).  Petitioner's claims are based upon the Sixth Amendment rights to trial by jury and to the effective assistance of counsel.

Petitioner contends that the trial judge improperly sentenced him to a term greater than the presumptive term for aggravated manslaughter, in violation of the rule announced in Blakely v. Washington, 542 U.S. 296 (2004).  The state courts rejected this claim, on the ground that the Supreme Court of New Jersey has held that the Blakely rule is not entitled to retroactive effect, citing State v. Natale, 184 N.J. 458 (2005) and that, in any event, Petitioner implicitly consented to judicial fact-finding.

In Apprendi v. New Jersey, 530 U.S. 466, 471, 490 (2000), pursuant to the Sixth Amendment right to trial by jury, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court overturned a sentence imposed under Washington state's sentencing system,

12

explaining that "the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." 542 U.S. at 302 (internal quotations omitted). Most recently, in <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Supreme Court applied the rule of <u>Apprendi</u> to the United States Sentencing Guidelines, finding the Guidelines unconstitutional, and rendering them merely advisory, rather than mandatory.

In <u>State v. Natale</u>, 184 N.J. 458 (N.J. 2005), the Supreme Court of New Jersey evaluated the constitutionality of the New Jersey sentencing scheme in light of the <u>Apprendi</u> line of cases.

> Our Code provisions make clear that, before any judicial factfinding, the maximum sentence that can be imposed based on a jury verdict or guilty plea is the presumptive term. Accordingly, the "statutory maximum" for <u>Blakely</u> and <u>Booker</u> purposes is the presumptive sentence.

<u>Natale</u>, 184 N.J. at 484. Because the Code's system allows for sentencing beyond the statutory maximum presumptive term, the Supreme Court of New Jersey found the state sentencing system unconstitutional and determined that the appropriate remedy would be to follow the lead of <u>Booker</u> and abolish the presumptive terms. "Without presumptive terms, the 'statutory maximum' authorized by the jury verdict or the facts admitted by a defendant at his guilty plea is the top of the sentencing range for the crime charged, <u>e.g.</u>, ten years for a second-degree offense." <u>Natale</u>, 184 N.J. at 487 (citation omitted). The

Supreme Court of New Jersey held that the rule it announced in Natale is applicable retroactively only to cases in the direct appeal pipeline as of the date of that decision, August 2, 2005. Natale, 184 N.J. at 494. Petitioner had already concluded his direct appeals by the date of the Natale decision; thus, the Natale decision did not entitle him to relief.

Similarly, the Court of Appeals for the Third Circuit generally has held that the rules announced in the Apprendi line of cases are not applicable retroactively to cases on federal collateral review. See generally In re Olopade, 403 F.3d 159 (3d Cir. 2005) (finding that the decision of the supreme Court in Booker does not apply retroactively to cases on collateral review); United States v. Swinton, 333 F.3d 481 (3d Cir.), cert. denied, 540 U.S. 977 (2003) (holding that Apprendi does not apply retroactively to cases on collateral review); In re Turner, 267 F.3d 225 (3d Cir. 2001) (holding that Apprendi does not apply retroactively to cases on collateral review). See also United States v. Price, 400 F.3d 844, 849 (10th Cir.), cert. denied, 126 S.Ct. 731 (2005) (Blakely does not apply retroactively to cases on collateral review). Thus, the Appellate Division's decision is neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Petitioner is not entitled to relief on this claim.

Nor is Petitioner entitled to relief on the theory that he was deprived of effective assistance of counsel.

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel is "the right to <u>effective</u> assistance of counsel." <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 694 (1984). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." <u>Strickland</u> at 694. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u> at 687. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." <u>Id.</u> at 695.

The performance and prejudice prongs of <u>Strickland</u> may be addressed in either order, and "[i]f it is easier to dispose of

an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." Id. at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91. If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland. See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right. Evitts v. Lucey, 469 U.S. 387 (1985). The Strickland standard for effective assistance of counsel applies to appellate counsel. See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004). Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that

16

appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Here, the state court correctly identified the controlling Supreme Court law. This Court is in agreement that Petitioner has failed to establish that either his trial or his appellate counsel provided deficient performance by failing to raise an Apprendi claim. Specifically, Petitioner has failed to establish either the "performance" or "prejudice" prongs of the Strickland test. For example, at the plea hearing, Petitioner admitted that he committed the homicide in violation of an existing restraining order, that he broke into the home of the victim after her repeated refusals to permit him entry, that he stabbed her multiple times, and that he knew at the time that the stabbings could lead to a probability of her death. The Presentence Report and police reports contained a detailed description of the crime, including information that the homicide was committed in front of the victim's mother and grandchild. At sentencing, Petitioner was given an opportunity to respond to that information and Petitioner did not object to that information. Thus, the facts upon which the trial court relied in sentencing were, in fact, admitted by Petitioner. Thus, Petitioner cannot establish either that his counsel's performance fell below an objective standard

of reasonable professional assistance or that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. Petitioner is not entitled to relief on this claim.

## V. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Petitioner has failed to make a substantial showing of the denial of a constitutional right. No certificate of appealability shall issue.

VI.   CONCLUSION

For the reasons set forth above, the Petition will be dismissed.   An appropriate order follows.

_____
Susan D. Wigenton
United States District Judge

Dated: April 1, 2008